UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **MISTY M. ARNOLD,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|     v. | )     **Cause No. 1:24-cv-00427-ALT** |
| | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** *sued as Frank Bisignano,*[1] | ) |
| | ) |
| | ) |
|     **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff Misty M. Arnold appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) (ECF 1; ECF 11 at 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Arnold applied for DIB and SSI in November 2022, alleging disability beginning January 1, 2019. (ECF 7 Administrative Record ("AR") 16).[2] Her claim was initially denied on April 19, 2023. (AR 16, 97-98). She requested reconsideration but was again denied on September 28, 2023. (AR 16, 111-12). On February 15, 2024, she appeared for a phone hearing before Administrative Law Judge (ALJ) Meredith Jacques. (AR 16, 41-67). Arnold was

---

[1] Frank Bisignano became the Commissioner of Social Security in May 2025, and thus, pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for his predecessor as the defendant in this suit. *See La'Toya R. v. Bisignano*, No. 1:24-cv-01564-JMS-TAB, 2025 WL 1413807, at *n.2 (S.D. Ind. May 15, 2025).

[2] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

represented by attorney Andrew Rockafellow, and vocational expert (VE) Robert Bond also appeared. (AR 16, 41). The ALJ issued an unfavorable decision on April 2, 2024, concluding that Arnold was not disabled because she could perform a significant number of unskilled, light-exertional jobs in the national economy despite the limitations caused by her impairments. (AR 16-26). Arnold filed a request for review by the Appeals Council, which denied the request on August 16, 2024 (AR 7-12), and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

Arnold filed a complaint in this district court requesting review of the Commissioner's final decision on October 15, 2024. (ECF 1). In this appeal, Arnold argues the ALJ made harmful errors by: (1) failing to adequately address the claimant's migraines and (2) failing to incorporate her conclusion that the claimant sometimes needed to use a cane. (ECF 11 at 8, 13).

On the date of the Commissioner's final decision, Arnold was forty-eight years old (*see* AR 105) and had a graduate school education and past work as a teacher, a customer service manager, and an assembler (AR 48, 62-63, 24). Arnold alleges disability due to low back pain, migraines, lumbar spondylosis, greater trochanteric pain syndrome, and anemia. (AR 332).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial

evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also id.* §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring the ALJ to consider sequentially whether:

> (1) the claimant is presently employed [in substantial gainful activity]; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's [RFC] leaves

3

> [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Pufahl v. Bisignano*, 142 F.4th 446, 452-53 (7th Cir. 2025) (citation omitted); *see also Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023); 20 C.F.R. §§ 404.1520, 416.920. "Between the third and fourth steps, the ALJ determines the claimant's [RFC], which is the claimant's maximum work capability." *Pufahl*, 142 F.4th at 453 (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). "The burden of proof is on the claimant for the first four steps." *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (citation omitted). "At step five, the burden shifts to the [Commissioner] to show that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Id.* (citation and internal quotation marks omitted). "If at any step a finding of disability or nondisability can be made, the Social Security Administration will not review the claim further." *Sevec*, 59 F.4th at 298 (citation and brackets omitted).

### B. The Commissioner's Final Decision

As a threshold matter, the ALJ found that Arnold met the insured status requirements for DIB through December 31, 2022. (AR 18).[3] At step one, the ALJ found that while Arnold had worked after the alleged onset date, such work activity did not rise to the level of substantial gainful activity. (AR 18). At step two, the ALJ found that Arnold had the following severe impairments: anemia, malabsorption syndrome, lumbar spondylosis, sacroiliitis, and migraines. (AR 19). At step three, the ALJ found Arnold does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

---

[3] **Error! Main Document Only.** Therefore, for purposes of her DIB claim, Arnold must establish that she was disabled as of December 31, 2022. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that she was disabled as of her date last insured in order to recover DIB).

C.F.R. Part 404, Subpart P, Appendix 1. (AR 20).

The ALJ assigned Arnold the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally balance as defined in the SCO of the DOT; occasionally stoop, kneel, crouch, and crawl; avoid concentrated exposure to hazards, such as unprotected heights and unguarded moving mechanical parts; avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants - as defined in the Selected Characteristics of Occupations of the DOT; and avoid concentrated exposure to extreme heat, extreme cold, humidity, and to weather as defined in the SCO of the DOT.

*(*AR 21).

At step four, the ALJ found Arnold is "capable of performing past relevant work as a teacher DOT 092.227- 010, SVP 7, light per the DOT and as performed; and assembler DOT 976.684-018, SVP 2, sedentary per the DOT and as performed." (AR 24). Alternatively, the ALJ found that a hypothetical individual of Arnold's age, education, experience, and RFC could perform a significant number of unskilled, light-exertional jobs in the national economy, including checker, routing clerk, and sorter. (AR 25). Thus, Arnold's applications for DIB and SSI were denied. (AR 26).

## C. Claimant's Migraines

Arnold argues the ALJ committed reversable error by failing to adequately address Arnold's migraines. (ECF 11 at 8). Specifically, she argues the ALJ erred in the listing analysis and the impact of her migraines on the RFC at Step 3.[4] (*Id.*).

Arnold must do more than "criticize the ALJ's decision . . . . She must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the

---

[4] Arnold also argues the ALJ failed to properly evaluate Arnold's migraines under Social Security Ruling (SSR) 19-4p, "Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders," but then concedes the error was harmless because she does not have the frequency of migraines needed to meet or equal a listings 11.02(B) or 11.02(D). (*See* ECF 11 at 8). Thus, this argument is not addressed herein.

5

record." *Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024). Arnold has failed to do so. I find the ALJ's characterization of Arnold's migraines and their impact on the RFC supported by substantial evidence. *See Schmidt,* 395 F.3d at 744.

In reviewing the record, one can piece together Arnold's history of migraines. In December 2021, Arnold reported her history of migraines related to barometric pressure to her doctor, explaining most of these headaches were in the spring. (AR 516). The doctor renewed her prescription for Imitrex. (AR 519). With a preventative and abortive medication, in June 2022, she reported having one or two weather-related migraines a week. (AR 497). In December 2022, Arnold was having one migraine per month with her medications, reiterating that her headaches were worse in the spring. (AR 481). In May 2023, Arnold went to the emergency room with a migraine, having begun experiencing symptoms the day before. (AR 933-34). She had been unable to take Imitrex right away, but told doctors it "normally works really well for her migraines." (AR 934). At the emergency room she took medication and was discharged. (AR 938). At her next doctor's appointment in June 2023, she reported she was having one migraine a month on her current medication. (AR 856).

The ALJ properly considered this medical evidence. In the ALJ's decision, she notes Arnold's complaints of musculoskeletal pain and migraines can indeed "cause limitations of both exertion and non-exertion." (AR 22). However, because Arnold testified that the migraines were connected to environmental factors and improved with medications to one time per month, the ALJ limited Arnold to light levels of exertion with postural and environmental limits. (*Id.* 22-23).

This conclusion is reasonable. As discussed, the record reflects that Arnold's migraines were successfully managed with medications and were reduced to about once a month. Arnold has failed to carry her burden of producing evidence that missing one day of work per month is

inconsistent with maintaining full-time competitive employment. In any event, with migraines occurring once a month, it is unclear whether they would ever impact her ability to work. A migraine could occur on a workday or not a workday, it could vary in severity, or it could respond to Arnold's migraine injection which treats the migraine when it occurs. The record simply does not connect the migraines to an inability to perform full-time work or absences from work. "It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004 (citations omitted); *see also Morales*, 103 F.4th at 470; *Flener ex rel. Flener*, 361 F.3d 442, 448 (7th Cir. 2004) ("[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." (citation omitted)).

      Arnold takes particular issue with the ALJ's understanding of "environmental" triggers of her migraines and the assessed environmental restrictions in the RFC. Although Arnold may not like the phrasing of the ALJ's opinion, the ALJ's characterization of the migraines is supported by the record. *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (commenting that the claimant's argument "amounts to mothering more than a dislike of the ALJ's phraseology"). The weather and barometric changes are uncontrollable, but Arnold's work environment and treatment of those migraines is controllable. Arnold has successfully treated her migraines, reducing them to once a month, and can treat the onset of the migraine with an injection. Further, the ALJ has limited the RFC by characterizing the work Arnold can perform as that which "avoid[s] concentrated exposure to dust, odors, fumes, and pulmonary irritants … and avoid[s] concentrated exposure to extreme heat, extreme cold, humidity, and to weather… ." (AR 21). Thus, the ALJ analyzed the steps Arnold had successfully taken to mitigate her migraines and addressed any future work environments which may exacerbate those. This is likely what the

ALJ means when she writes "[t]he claimant's headaches are accommodated by limits from environmental factors." (AR 23). However, to the extent Arnold believes the ALJ should have considered the inevitability of weather changes, the record simply does not connect the migraines to an inability to work or absences from work. The ALJ's decision regarding Arnold's migraines is supported by substantial evidence.

### D. Claimant's Use of a Cane

Arnold argues the ALJ committed reversable error by failing to incorporate in the RFC her conclusion that the claimant sometimes needed to use a cane. (ECF 11 at 13). "[T[he ALJ was only required to incorporate limitations that she found supported by the evidence." *Alvarado v. Colvin*, 836 F.3d 744, 751 (7th Cir. 2016). The ALJ did not find the need for a cane to be supported by the evidence in the record. I agree.

The agency requires that to "find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing . . .." SSR 96-9p, 1996 WL 374185, at * (July 2, 1996). Arnold had the burden of proof here, as it was her responsibility to "prove to the Court why [s]he require[d] an ambulatory device." *Starks v. Comm'r of Soc. Sec.*, No. 1:23-cv-00439-SLC, 2025 WL 848994, at *6 (N.D. Ind. Mar. 18, 2025).

Arnold testified that she used the cane when she felt unstable which was about seven days per month. (AR 21). However, the ALJ found this level of usage was not reflected in the record. (AR 21-22). In July and September 2022, Arnold was observed only twice using cane, and on both instances the treatment notes indicate Arnold's pain was worse than normal due to lack of treatment. (AR 395, 400). Specifically, in July, Arnold had not had an injection, which effectively treated the pain (AR 395) and in September, she has not taken her medication before

8

a long drive (AR 397). Despite this, Arnold told her provider the medication was effective when she took it. (AR 397). Thus, the record shows that Arnold occasionally used a cane because of the severity of her pain, particularly when she did not take her pain medications, but no medical need given the general success of her pain management regimen. (AR 394, 399-400, 423). Such occasional use of the cane supports the ALJ's finding that the use of a cane was not medically necessary.

The record also contains plenty of evidence that Plaintiff was able to function without a cane, supporting the ALJ's conclusion of occasional use of a cane rather than a medical necessity. This evidence includes many doctors' visits where Arnold exhibited a normal gait and did not use a cane. (*See* AR 483, 492-93, 507, 518, 592). Record also reflects doctors' assessments of normal gait and full strength, which also supported the ALJ's decision that the use of the cane was not medically necessary. (AR 23, 846, 964). Furthermore, the ALJ relied, in part, upon the opinions of the state agency physicians, J.V. Corcoran, M.D., and Joshua Eskonen, D.O., who reviewed the evidence of record in April 2023 and September 2023, respectively, and concluded that Arnold could lift and carry ten pounds frequently and twenty pounds occasionally and sit, stand, and walk up to six hours in an eight-hour workday. (AR 24, 88-89, 102-03). Neither of these physicians indicated that Arnold needed to use an assistive device in doing so.

In sum, although Plaintiff points to her own testimony regarding cane usage, she has not pointed to "evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *Morales,* 103 F.4th at 470. "[T[he ALJ was only required to incorporate limitations that she found supported by the evidence." *Alvarado*, 836 F.3d at 751 (citation omitted). The evidence in the record amply supports the ALJ's conclusion that Arnold's isolated cane usage does not support a need for a cane in the workplace.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Arnold.

SO ORDERED.

Entered this 12th day of November 2025.

                                                /s/ Andrew L. Teel
                                                Andrew L. Teel
                                                United States Magistrate Judge